**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALTA WATERFORD, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BIG SCREEN ENTERTAINMENT GROUP, INC. and COLONIAL STOCK TRANSFER CO, INC.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | No. 25 C 14154<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Alta Waterford, LLC ("Alta") filed this suit on November 19, 2025, asserting breach of contract claims against Defendants Big Screen Entertainment Group, Inc. ("BSEG") and Colonial Stock Transfer Co., Inc. ("Colonial"). After the Court dismissed Alta's initial complaint for lack of subject matter jurisdiction, Alta filed an amended complaint, bringing the same breach of contract claims. Alta claims that BSEG and Colonial failed to properly compensate Alta with BSEG stock shares in violation of their respective contracts. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court does not have subject matter jurisdiction over Alta's claims and that Alta has failed to state a claim against them. The Court finds that it has subject matter jurisdiction and that Alta has sufficiently stated its breach of contract claims. Therefore, the Court denies Defendants' motion to dismiss.

## BACKGROUND[1]

Alta sells investor relations and marketing services to publicly traded companies, with the goal of generating investor awareness for their stock. In early 2024, BSEG hired Alta for copywriting services to market BSEG's stock and signed a written contract (the "BSEG Agreement") detailing Alta's compensation. BSEG also had a separate agreement with Colonial (the "Colonial Letter"), which stated that Colonial must issue shares to Alta "immediately, without delay" and "without any further action or confirmation by [BSEG]." Doc. 26 at 4. The Colonial Letter also states that Alta is an intended beneficiary.

The BSEG Agreement explained that Alta would receive stock compensation for its services, in an amount "determined by the complexity of" the services "while taking into account the risks of stock compensation." Doc. 26 at 8. Initially, the BSEG Agreement required BSEG to pay Alta 4,000,000 restricted shares of BSEG's common stock valued at 0.029 per share to be issued immediately upon execution of the BSEG Agreement. Beyond that, the BSEG Agreement also contained various other covenants meant to protect the value of the stock to Alta, including that (1) if the stock went into "yield," BSEG would pay Alta 4,000,000 additional shares; (2) if BSEG was deemed to be a "shell," BSEG would pay Alta 4,000,000 additional shares; and (3) if the value of BSEG stock dropped below the issue price on the maturity date of the restricted shares, BSEG would pay Alta additional shares calculated using the method provided in the BSEG Agreement.

---

[1] The Court takes the facts in the background section from Alta's amended complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court also considers the supplemental jurisdictional statement that Alta filed in response to the Court's order. *Id.* The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

At Alta's direction, Colonial issued the original 4,000,000 shares of BSEG stock to Alta without issue. In 2025, however, BSEG stock went into yield and had a value of $0.0123, which was less than the issue price. BSEG was also deemed a shell on August 6, 2025. Accordingly, BSEG owed Alta an additional 35,000,000 shares. Although Alta issued a share reservation notice to Colonial for these shares, Colonial did not reserve these shares as requested. Further, BSEG did not issue the shares as outlined in the BSEG Agreement. The current value of these 35,000,000 shares based on the stock market price is $556,500.

Alta now brings an action against BSEG and Colonial, alleging that BSEG breached by failing to compensate Alta for the change in stock value and that Colonial breached by refusing to reserve the shares Alta requested.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174. If, however, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex*

*Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Subject Matter Jurisdiction

The Court begins with the parties' arguments regarding subject matter jurisdiction because "[i]t is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every case." *Foster v. Hill*, 497 F.3d 695, 696–97 (7th Cir. 2007). The power to decide "must be conferred upon a federal court." *Morfin v. Kerry*, No. 14 C 10198, 2015 WL 13439820, at *1 (N.D. Ill. Sep. 22, 2015). Because Alta bases federal jurisdiction on diversity of citizenship, it must "identify the citizenship of each party to the litigation." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007). Further, because Alta is a limited liability corporation ("LLC") and "the citizenship of an LLC is the citizenship of

each of its members," Alta must also "identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well." *Id.*; *see also Hart v. Terminex*, 336 F.3d 541, 543 (7th Cir. 2003) ("[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." (citation omitted)).

The Court previously dismissed Alta's complaint because Alta had not provided sufficient information about the citizenship of its members for the Court to determine whether subject matter jurisdiction existed. Defendants now move to dismiss on these same grounds, arguing that Alta has not remedied the jurisdictional defects present in its original complaint. In particular, Defendants argue that Alta has not pleaded sufficient facts to establish the citizenship of its sole member, Highland Hawk Trust ("Highland"), or the citizenship of Highland's corporate trustee, Asiatrust Ltd.[2] Alta argues that its amended complaint properly traces the LLC's citizenship through "a member-by-member, trustee-by-trustee chain" and that it has resolved all jurisdictional issues.

The Court directed Alta to provide a supplemental jurisdictional statement to more fully explain whether Highland was a traditional trust or a business trust and to identify by name and citizenship each trustee, member, or beneficiary, as appropriate. This distinction is crucial because it helps the Court to determine the trust's citizenship. *See Watt v. Village Place Apartments*, No. 1:26-CV-00637, 2026 WL 2622461, at *6 (N.D. Ill. Sep. 4, 2026) ("Courts

---

[2] Defendants also asks the Court to take judicial notice of "the existence and content, not the truth of, Alta's filings" in *Alta Waterford, LLC v. ConnectM Technology Solutions, Inc.*, No. 25-cv-03606 (N.D. Ill.); *Alta Waterford LLC v. Onassis Holdings Corp.*, No. 23-cv-1569 (S.D.N.Y.); *Alta Waterford LLC v. Clearday, Inc.*, No. 22-cv-06630 (N.D. Ill.); and *Alta Waterford LLC v. Universal New Energy Holding Group, Inc.*, No. 25-cv-14696 (N.D. Ill.). Doc. 27 at 13. Specifically, Defendants ask the Court to take notice of the difference between Alta's citizenship representations in those cases as compared to this case. The Court will do so but maintains Alta has sufficiently pleaded diversity jurisdiction here.

must determine whether a trust is a traditional or business trust, which in turn determines whether the trust's citizenship is based on the citizenships of its trustees or its members, respectively."). While the Seventh Circuit has not provided guidance about the distinction between a traditional trust and a business trust, other circuits have articulated the difference as "'a traditional trust is a trust that lacks juridical person status'—meaning it cannot sue and be sued in its own name—whereas a business trust has juridical person status." *See id.* (citing *Wang ex rel. Wong v. New Mighty U.S. Trust*, 843 F.3d 487, 495 (D.C. Cir. 2016)).

Alta's jurisdictional statement confirmed Highland is a traditional trust that takes on the citizenship of its two trustees, Alex Pachan, a citizen of Michigan, and South21 Fiduciary Limited ("South21") (formerly Asiatrust Ltd.), a citizen of the Cook Islands. This statement is sufficient. *See Thomas*, 487 F.3d at 534 ("[A]n LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the . . . notice of removal was filed, and, if those members have members, the citizenship of those members as well.").

Taken together, Alta's amended complaint and supplemental jurisdictional statement properly allege the citizenship of its LLC members. Alta is a citizen of Michigan and the Cook Islands. Defendant BSEG is a Nevada corporation with its principal place of business in California. Defendant Colonial is incorporated and maintains its principal place of business in Utah. Complete diversity exists, and so the Court has subject matter jurisdiction over Alta's claims.

## II. Failure to State a Claim

Next, the Court moves to the merits of Defendants' breach of contract arguments. To state a claim for a breach of contract under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the

defendant, and (4) damages caused by that breach." *Ivery v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, ¶ 28. Alta alleges that BSEG breached by violating Sections 5(C) and 5(D) of the BSEG Agreement and that Colonial breached by refusing to reserve the BSEG shares following Alta's notice of share reservation pursuant to the Colonial Letter. Defendants argue that Alta has not stated a claim under either theory.

**A. Count I – Breach of Contract (BSEG)**

Defendants first argue that Alta's breach of contract claim as to the BSEG Agreement fails because Alta's allegations do not support a demand for liquidated damages and its 35-million-share "liquidated damages demand" is an unenforceable penalty. Alta contends that the Court cannot resolve this issue on the pleadings because the enforceability of a liquidated damages clause is an affirmative defense. Liquidated damages are "[a]n amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches." Black's Law Dictionary (11th ed. 2019). Having reviewed the BSEG Agreement, the Court does not find any mention of a liquidated damages clause or other contractually stipulated amount resulting from a breach.[3] Rather, the contract sections that the parties have placed at issue are more properly understood as compensation for services performed, not a measure of damages in the event of breach.

Defendants also argue that the BSEG Agreement contradicts Alta's damages theory because the amended complaint does not detail how Alta calculated its damages figure based on the contract's formulas. In evaluating a motion to dismiss, the Court reviews the complaint and

---

[3] Despite this, both parties engaged in substantial briefing on the "liquidated damages" issue. The Court does not address these in substance because they are not relevant to the resolution of the motion to dismiss.

exhibits attached to the complaint. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Court is not bound by a party's characterization of an exhibit and may independently examine the document to form its own opinions about it. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

In its response brief, Alta contends that the BSEG Agreement supports, rather than contradicts, its damages theory. Alta alleges facts and cites specific contractual provisions from the BSEG Agreement to support its claim, which outlines the calculations required to determine the additional stock shares it alleges BSEG owes it under the agreement. Alta further contends it need not provide a fully reconciled damages model to survive a motion to dismiss.

The Court agrees. "[I]t is essential in pleading the existence of a valid contract to allege facts sufficient to indicate the terms of the contract." *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 30. Nothing more is required. If Defendants take issue with the amount of damages claimed or the sufficiency of Alta's proof, these are "factual matters for the finder of fact, and not properly disposed of in a motion to dismiss." *Moreco Energy, Inc. v. Penberthy-Houdaille, Inc.*, No. 86 C 20153, 1988 WL 124928, at *3 (N.D. Ill. Oct. 21, 1988).

Accordingly, the Court denies Defendants' motion to dismiss Alta's breach of contract claim against BSEG (Count I).

### B. Count II – Breach of Contract (Colonial)

Defendants also argue that Alta's breach of contract claim as to the Colonial Letter fails because the allegations in the amended complaint (1) do not show that Alta satisfied Colonial's express conditions to issuance and (2) are derivative of, and must therefore fall with, Count I. Alta contends that it has properly alleged the conditions to Colonial's performance under Federal

Rule of Civil Procedure 9(c) and that Colonial's obligation is not subject to the three conditions on which Defendants rely.

The Court finds Alta's reasoning as to Colonial's obligations persuasive. The Colonial Letter authorizes and instructs Colonial to reserve an initial 2,000,000 shares of common stock and allows Alta, as the consultant, to provide written instruction to Colonial, from time to time, to increase the number of shares reserved. Alta pleaded that it issued a share reservation notice to Colonial for 35,000,000 shares of BSEG stock and that Colonial refused to reserve the requested shares. Alta claims that Colonial's refusal to reserve the BSEG shares after receiving Alta's notice breached the Colonial Letter.

By contrast, Defendants focus on Colonial's refusal to *issue* the BSEG shares to Alta. Defendants emphasize that Alta must meet three conditions precedent outlined in the Colonial Letter before it can require Colonial to issue shares without any further action or confirmation by BSEG: (1) an executed notice of issuance, (2) a Rule 144 opinion of counsel, and (3) confirmation that the number of shares to be used is less than 4.99% of the total issued common stock. But, as Alta correctly notes, the Colonial Letter only requires Alta to meet these conditions when it requests that Colonial *issue* shares of stock without BSEG's action or confirmation. The Colonial Letter outlines the conditions of issuance as separate and apart from the conditions of reservation and does not conflict with the conditions of reservation that Alta properly alleged. All that the Colonial Letter required of Alta to request that Colonial *reserve* shares was for Alta to provide notice, and Alta alleges that it did so here.

Further, Colonial's obligations under the Colonial Letter are not derivative of the BSEG Agreement such that Alta's breach of contract claims necessarily rise and fall together. Whether BSEG chose to issue the stock shares or permit Colonial to do so does not prevent Colonial from

reserving the requested shares outlined in Alta's reservation request. Regardless, even if Alta's alleged breach of the Colonial Letter was derivative, because the Court allows Alta's alleged breach of the BSEG Agreement to go forward, so to would the alleged Colonial Letter breach.

Accordingly, the Court denies Defendants' motion to dismiss Alta's breach of contract claim against Colonial (Count II).

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss [27].

Dated: October 14, 2026

SARA L. ELLIS
United States District Judge